UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIFELINE FOOD CO., INC., | Case No. 5:15-cv-00034-PSG |
| Plaintiffs, | **ORDER GRANTING PARTIAL MOTION TO DISMISS** |
| v. | |
| GILMAN CHEESE CORPORATION f/k/a DRANGLE FOODS, INC., | (Re: Docket No. 24) |
| Defendant. | |

After working together for nearly 25 years, Plaintiff Lifeline Food Co., Inc. and Defendant Gilman Cheese Corporation, formerly known as Drangle Foods, Inc. dispute whether GCC misappropriated Lifeline's proprietary recipes, formulations and processes for making fat-free cheese. GCC moves to dismiss Lifeline's claims of false promise fraud, unfair competition and conversion.[1] As written, each of GCC's claims arise from the same nucleus of operative facts: GCC's alleged use of trade secrets. CUTSA therefore preempts Lifeline's unfair competition and conversion claims, and the doctrine of election of remedies bars Lifeline's false promise claim. The court GRANTS GCC's motion.

---

[1] *See* Docket No. 24.

**I.**

The stated purpose of California's Uniform Trade Secrets Act is "to provide 'unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law.'"[2]  "CUTSA has been characterized as having a 'comprehensive structure and breadth'" which "suggests a legislative intent to occupy the field . . . at least as to common law trade secret misappropriation claims."[3]

To that end, CUTSA contains a supersession provision with limitations.  Because "this provision would appear to be rendered meaningless if, in fact, claims which are based on trade secret misappropriation are not preempted by the state's statutory scheme," CUTSA supersedes "common law claims that are based on the same nucleus of facts as the misappropriation of trade secret claims for relief."[4]  At the same time, the statute "does not affect contractual remedies, whether or not based upon misappropriation of a trade secret, other civil remedies that are not based upon misappropriation of a trade secret, or criminal remedies, whether or not based upon misappropriation of a trade secret."[5]  "The test for whether a claim overlaps with the CUTSA involves "a factual inquiry, one that examines the conduct alleged in the claim."[6]  "Depending on the particular facts pleaded,"[7] CUTSA can operate to supersede claims for unfair competition and

---

[2] *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (quoting *American Credit Indemnity Co. v. Sacks*, 213 Cal. App. 3d 622, 630 (1989)).

[3] *Id.* at 954, 958 (quoting *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003)).

[4] *See K.C. Multimedia*, 171 Cal. App. 4th at 958 (internal citations omitted); *see also NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 839 n.7 (May 12, 2014) ("Federal courts have followed California courts' interpretation of the [supercessive] effect of the CUTSA.").

[5] Cal. Civ. Code § 3426.7(b).

[6] *See K.C. Multimedia*, 171 Cal. App. 4th at 958 (internal citations omitted).

[7] *See id.* at 958.

2
Case No.: 5:15-cv-00034-PSG
ORDER GRANTING PARTIAL MOTION TO DISMISS

conversion.[8] Further, CUTSA may supersede "claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA" when "the basis of the alleged property right is in essence that the information is not . . . generally known to the public," because then "the claim is sufficiently close to a trade secret claim that it should be superseded."[9]

To a similar end, the doctrine of election of remedies, stemming from the equitable principles of estoppel, prevents alternative and inconsistent remedies based on the same nucleus of operative facts.[10] The doctrine precludes a plaintiff from pursuing concurrent causes of action based on breach of contract and fraud where each action arises out of the same obligations and the same operative facts.[11]

Lifeline is a California corporation that markets and distributes fat-free cheeses under the label "Lifetime Healthy Rewards."[12] GCC is a Wisconsin corporation that manufactures cheese products.[13]

In or about 1990, Lifeline and GCC began discussing the possibility of developing and manufacturing a line of fat-free cheeses.[14] The parties allegedly agreed that Lifeline would have

---

[8] *See, e.g.*, *MedioStream Inc. v. Microsoft Corp.*, 869 F.Supp.2d 1095, 1116 (N.D. Cal. 2012) (dismissing unfair competition claim and conversion claim); *SunPower Corp. v. SolarCity Corp.*, Case No. 5:12-cv-00694-LHK, 2012 WL 6160472, at *7 (N.D. Cal. Dec. 11, 2012) (dismissing conversion claim); *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. 5:08-cv-3931-RS, 2009 WL 55178, at *5 (N.D. Cal. Jan. 7, 2009) (dismissing unfair competition claim).

[9] *See SunPower*, 2012 WL 6160472 at **5-6 (citing *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010)); *see also Robert Half Int'l, Inc. v. Ainsworth*, Case No. 14-cv-2481-WQH, 2014 WL 7272405, at *8 (S.D. Cal. Dec. 17, 2014).

[10] *See, e.g.*, *Waffer Intl. Corp. v. Khorsandi*, 69 Cal.App.4th 1261, 1274 (1999); *Baker v. Superior Court*, 150 Cal. App. 3d 140, 145-46 (1983); *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.*, 66 Cal. App. 3d 101, 136-37 (1977).

[11] *See, e.g.*, *Gen Ins. Co. v. Mammoth Vista Owner Ass'n*, 174 Cal. App. 3d 810, 828 (1985).

[12] *See* Docket No. 9 at ¶ 4.

[13] *See id.* at ¶ 5.

[14] *See id.* at ¶ 9.

3
Case No.: 5:15-cv-00034-PSG
ORDER GRANTING PARTIAL MOTION TO DISMISS

full ownership of the formulas for the fat-free cheese line and GCC would manufacture fat-free cheese exclusively for Lifeline.[15] The parties then jointly created recipes, formulas and processes for several varieties of fat-free cheese.[16]

In 1991, the parties entered into a formal, written contract providing that:

> In return for the above compensation [of $2,500], Drangle Foods Inc. gives Lifeline Food Company complete and exclusive rights to the Fat Free formulation. Drangle will produce & sell this product line only to Lifeline. All particulars regarding marketing, the process and formulation procedure will be held confidential by both Companies and will belong to Lifeline Food Co., Inc.[17]

Lifeline paid GCC $2,500 for its participation in developing the fat-free cheese line.[18] The parties also executed an addendum to the 1991 contract pursuant to which Lifeline paid GCC another $2,500 to develop several new varieties of cheeses under the same terms as the 1991 contract.[19]

The parties entered into a second contract in 1993 under which GCC agreed to manufacture the fat-free cheese line exclusively for Lifeline and in which Lifeline agreed to use GCC as its sole manufacturer.[20] This contract also provided that Lifeline would have full ownership of the fat-free cheese line:

> Drangle Foods gives Lifeline Food Company complete and exclusive rights to the Fat Free formulation and any other formulas developed for Lifeline Food Company. . . . All particulars regarding marketing, the process and formulation procedure will be held confidential by both Companies and will belong to Lifeline Food Company, Inc.[21]

After signing the 1993 contract, GCC manufactured a low-fat cheese line for Lifeline. Lifeline alleges that because the 1993 contract gave Lifeline "complete and exclusive rights to 'any other

---

[15] *See id.* at ¶ 10.

[16] *See id.* at ¶ 11.

[17] *See id.* at ¶ 14, Ex. 2.

[18] *See* Docket No. 9 at ¶ 15.

[19] *See id.* at ¶ 17, Ex. 4.

[20] *See id.* at ¶¶ 19-20, Ex. 5.

[21] *See id.*

4
Case No.: 5:15-cv-00034-PSG
ORDER GRANTING PARTIAL MOTION TO DISMISS

1  formulas' developed for [Lifeline]," it "owns the recipes, formulas and processes for the
2  production" of the low-fat cheese line.[22]  Lifeline also alleges that these recipes, formulas and
3  processes constitute trade secrets.[23]

4  Although the 1993 contract expired in 1998, the parties continued to do business under the
5  same basic terms as those provided in the 1993 contract.[24]  This relationship continued without
6  incident until 2014, when Lifeline learned that GCC was making fat-free cheese for Red Apple,
7  LLC, one of Lifeline's competitors.[25]  GCC's manager acknowledged that it was using the same
8  formulas to create fat-free cheese for Red Apple and for Lifeline, but claimed that GCC had the
9  right to do so because GCC owned the formulas now that the parties' 1993 contract had expired.[26]
10 GCC would not give Lifeline the formulas it used to manufacture Lifeline's fat-free and low fat
11 cheese line.[27]

12 Lifeline further learned around May 2014 that GCC was advertising its own line of fat-free
13 and reduced-fat cheese on its website.[28]  Based on GCC's contention that it owns the disputed
14 formulas, as well as the fact that GCC was selling the same varieties of cheeses that it
15 manufactured for Lifeline, Lifeline concluded that GCC was using Lifeline's formulas to
16 manufacture its own cheese.[29]  Lifeline then filed this suit against GCC for misappropriation of
17 trade secrets, breach of contract, promissory fraud, unfair competition, conversion and injunctive
18 and declaratory relief.[30]

---

[22] *See id.* at ¶ 21.

[23] *See id.*

[24] *See* Docket No. 9 at ¶ 23.

[25] *See id.* at ¶ 24.

[26] *See id.* at ¶ 27.

[27] *See id.* at ¶ 28.

[28] *See id.* at ¶ 33.

[29] *See id.* at ¶ 34.

[30] *See* Docket No. 9 at ¶¶ 37-78.

5
Case No.: 5:15-cv-00034-PSG
ORDER GRANTING PARTIAL MOTION TO DISMISS

1  GCC now moves to dismiss Lifeline's claims for unfair competition, conversion and promissory fraud.[31]

**II.**

This court has jurisdiction under 28 U.S.C. § 1331.  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[32]

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[33] Alleged facts must add up to "more than a sheer possibility" that the defendant acted unlawfully.[34] While a "heightened fact pleading of specifics" is not required, the plaintiff must still allege facts sufficient to "raise a right to relief above the speculative level."[35]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[36] "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[37]  In reviewing a Rule 12(b)(6) motion, a court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.[38]  A court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."[39]

---

[31] *See* Docket No. 24.

[32] *See* Docket Nos. 13, 19.

[33] Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[35] *Twombly*, 550 U.S. at 555, 570.

[36] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[37] *Id.* (citing *Twombly*, 550 U.S. at 557).

[38] *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 2074 (2011).

[39] *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citations omitted).

6
Case No.: 5:15-cv-00034-PSG
ORDER GRANTING PARTIAL MOTION TO DISMISS

**III.**

CUTSA preempts Lifeline's unfair competition and conversion claims, and the doctrine of election of remedies bars Lifeline's false promise claim, as follows.

***First***, dismissal of an unfair competition claim[40] is proper when the claim is based solely upon allegations that the defendant has misused the plaintiff's secret or confidential information.[41] For instance, in *MedioStream, Inc. v. Microsoft Corp.*, the court dismissed a Section 17200 unfair competition claim under CUTSA because the court saw "no difference" between the plaintiff's allegation in support of its unfair competition claim that defendants used "[p]laintiff's [t]rade [s]ecrets and other confidential and property information . . . with deliberate intent to injure [p]laintiff's business and improve their own business and/or financial status" and the allegations that "form the basis of [plaintiff's] trade secrets claim."[42] Similarly, in *NetApp, Inc. v. Nimble Storage, Inc.*, the court held that CUTSA preempted the plaintiff's Section 17200 unfair competition claim because plaintiff had "not alleged any [actions by defendants] with respect to [the unfair competition claims] other than theft of secret information."[43]

Like the unfair competition claims at issue in *MedioSteam* and *NetApp*, CUTSA preempts Lifeline's unfair competition claim because the claim is based solely upon GCC's alleged misuse of Lifeline's trade secrets. In its complaint, Lifeline supports its unfair competition claim by incorporating the entirety of the allegations made in support of its misappropriation of trade secrets claim.[44] Lifeline further alleges that GCC's "misappropriation of trade secrets . . . constitutes

---

[40] Cal. Bus. & Prof. Code § 17200 prohibits unlawful, unfair or fraudulent business practices. A practice may violate Section 17200 even if it is not proscribed by other law. *See Arce v. Kaiser Foundation Health Plan, Inc.*, 181 Cal. App. 4th 471, 486 (2010).

[41] *See, e.g.*, *MedioStream*, 869 F. Supp. 2d at 1116.

[42] *See id.*

[43] *NetApp*, 41 F. Supp. 3d at 840.

[44] *See* Docket No. 9 at ¶ 63.

7
Case No.: 5:15-cv-00034-PSG
ORDER GRANTING PARTIAL MOTION TO DISMISS

unlawful, unfair and fraudulent business practice."[45]  Lifeline's unfair competition claim thus "rests squarely on its factual allegations of trade secret misappropriation" because Lifeline alleges as a "factual basis for its [unfair competition claim] . . . the same conduct that gives rise to [its] trade secrets claim."[46]

Lifeline contends that its breach of contract allegations stand regardless of whether its formulas and recipes are trade secrets.[47]  But while Lifeline is correct that systemic breaches of contract may constitute unfair business practice under Section 17200, Lifeline's complaint alleges that GCC's "misappropriation of trade secrets"—not its systematic breach of the parties' contracts—is what "constitutes an unlawful, unfair and fraudulent business practice."[48]  Lifeline does not claim "materially distinct" facts:  GCC's alleged failure to provide Lifeline with the disputed recipes and formulas and use of those recipes and formulas to make cheese for others supports both claims.[49]

***Second***, CUTSA preempts Lifeline's conversion[50] claim, which "arise[s] from the same nucleus of operative facts" as its trade secret claim.[51]  A conversion claim arises from the same nucleus of operative facts as a trade secret claim if "the only basis for any property right is trade secret[] law" because "then a conversion claim predicated on the theft of that property is unquestionably based upon misappropriation of a trade secret."[52]  To survive a motion to dismiss a

---

[45] *See id.* at ¶ 64.

[46] *See K.C. Multimedia*, 171 Cal. App. 4th at 962.

[47] *See* Docket No. 32 at 11.

[48] *See* Docket No. 9 at ¶ 64; *see also Arce*, 181 Cal. App. 4th at 489-90.

[49] *See* Docket No. 34 at 4; *cf. K.C. Multimedia*, 171 Cal. App. 4th at 960.

[50] A claim for conversion requires a plaintiff to establish "ownership or right to possession of property, wrongful disposition of the property right and damages."  *Kremen v. Cohen*, 337 F.3d 1024, 1029-31 (9th Cir. 2003).

[51] *See K.C. Multimedia*, 171 Cal. App. 4th at 958.

[52] *See Silvaco Data Sys.*, 184 Cal. App. 4th at 238-39 (internal citations omitted).

8
Case No.: 5:15-cv-00034-PSG
ORDER GRANTING PARTIAL MOTION TO DISMISS

conversion claim based on CUTSA preemption, a plaintiff therefore must demonstrate a property right "outside of trade secrets law."[53]

Lifeline supports its conversion claim by incorporating the same facts that form the basis of its trade secret claim and alleging that GCC "intentionally and substantially interfered with [p]laintiff's [t]rade [s]ecrets by using said [t]rade [s]ecrets" without Lifeline's permission.[54] Lifeline's conversion claim therefore is not factually distinct from its trade secret claim because both claims are based on GCC's alleged use of the same recipes, formulas and manufacturing processes. Further, Lifeline's incorporation of the entirety of its trade secret claim in its conversion claim indicates that there is "no material difference" between the claims.[55]

Lifeline contends that its conversion claim is based upon a property right "outside of trade secrets law" because its series of contracts with GCC provide Lifeline with a contractual right to the disputed formulas, recipes and processes.[56] Lifeline says that by alleging that the contracts establish that "the recipes and manufacturing processes belonged to Lifeline," Lifeline has asserted "some other basis in . . . law [separate from trade secret law] on which to predicate the requisite property right" necessary to state a claim for conversion, such as goodwill property.[57] However, Lifeline's contention that its conversion claim is grounded in both contract and trade secret law

---

[53] *See id.*

[54] *See* Docket No. 1 at ¶ 68; *see also MedioStream*, 869 F. Supp. 2d at 1116 (allegations that defendants were liable for conversion because they took "certain documents and data and computer data discs that contain or reference [p]laintiff's Trade Secrets" were "no more than a restatement" of the facts supporting plaintiff's trade secret claim); *SunPower*, 2012 WL 6160472, at *7 (allegations that defendants were liable for conversion because they "interfered with [plaintiff's] ownership and possessory rights" in plaintiff's non-trade secret proprietary information were the same as allegations made in support of trade secret claim).

[55] *See SunPower*, 2012 WL 6160472 at *13.

[56] *See id.* at 8-10 (citing *Silvaco*, 184 Cal. App. 4th at 239); Docket No. 32 at 9. California courts have held that intangible property rights can form the basis of a conversion claim. *See Kremen*, 337 F.3d at 1034.

[57] *See* Docket No. 32 at 9-10; *see also Silvaco*, 184 Cal. App. 4th at 238-39; *Inglewood Redevelopment Agency v. Aklilu* 153 Cal. App. 4th 1095, 1107 (2007).

9
Case No.: 5:15-cv-00034-PSG
ORDER GRANTING PARTIAL MOTION TO DISMISS

does not negate the fact that both claims are based on GCC's allegedly improper use of the same recipes, processes and formulas.[58]

Lifeline relies on *Angelico Textile Services, Inc. v. Park* for the proposition that CUTSA does not supersede claims that "have a basis independent of any misappropriation of a trade secret."[59] There the court observed that CUTSA "by its terms does not displace a contract claim, even if it is based on the misappropriation of a trade secret" to bolster its conversion claim.[60] The court then held that a claim for conversion of documents which were not trade secrets was not preempted.[61] But unlike *Angelico*, Lifeline does not allege facts claiming that GCC converted property other than the alleged trade secrets.

***Third***, the doctrine of election of remedies bars Lifeline's false promise claim because it arises out of the same obligations and operative facts as Lifeline's breach of contract claim.[62] Lifeline's promissory fraud claim is premised upon GCC's allegedly false promise to comply with its contractual obligation to provide Lifeline with ownership of the disputed recipes, formulas and processes.[63]

---

[58] Lifeline also contends that GCC has improperly retained "trim," portions of larger cheese blocks left over after the trimming process. *See* Docket No. 32 at 5. Lifeline asserts this "trim" belongs to Lifeline and that GCC's retention of the trim "constitutes a separate conversion of a physical object unaffected by CUTSA." *See id.* The court does not consider Lifeline's allegations with respect to the "trim" because Lifeline does not allege these facts in the amended complaint that is the subject of this motion. *See* Docket No. 9; Docket No. 34 at 2.

[59] *See* Docket No. 32 at 6 (citing 220 Cal. App. 4th 495 (2013).

[60] *See* 220 Cal. App. 4th at 506.

[61] 220 Cal. App. 4th at 508.

[62] *See Engalla v. Permanente Medical Group, Inc.*, 15 Cal. App. 4th 951, 973-74 (1997) ("An action for promissory fraud may lie where a defendant fraudulently induces a plaintiff to enter into a contract" because "[a] promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.").

[63] *See* Docket No. 9 at ¶¶ 56-62.

10
Case No.: 5:15-cv-00034-PSG
ORDER GRANTING PARTIAL MOTION TO DISMISS

1    Lifeline contends "courts have repeatedly noted that causes of actions based on breach of
2    contract and promissory fraud arise out of separate operative facts and obligations,"[64] and cites
3    *Baker v. Superior Court* as one example.[65] However, in *Baker*, the plaintiff's promissory fraud
4    cause of action was premised upon the fact that the defendant had induced plaintiffs to enter into
5    the remodeling contract by "falsely promising" that they would construct rental uses "in a good and
6    workmanlike manner within six months and at the agreed price."[66] In contrast, the breach of
7    contract cause of action was premised upon the fact that defendants had "wholly failed to perform"
8    the remodeling contract.[67] The court therefore concluded that plaintiff's promissory fraud cause of
9    action was based upon defendants' alleged breach of "separate obligations" and "involved separate
10   actions at different points in time" than plaintiffs' breach of contract cause of action.[68]

Unlike the claims at issue in *Baker*, Lifeline's promissory fraud claim is predicated upon the same alleged failure to perform under the parties' series of contracts that forms the basis for its breach of contract claim.[69] Lifeline cannot avoid the preclusive effect of the election of remedies doctrine by attempting to characterize a lack of performance as a failure to follow through on a promise rather than as a breach of its contractual obligations.

**IV.**

GCC's motion to dismiss Lifeline's claims for false promise fraud (count three), unfair competition (count four) and conversion (count five) is GRANTED. The Ninth Circuit requires

---

[64] *See* Docket No. 32 at 11.

[65] *See Baker*, 150 Cal. App. 3d at 146; *see also* Docket No. 32 at 11-12.

[66] *See Baker*, 150 Cal. App. 3d at 144.

[67] *See id.*

[68] *See id.* at 145.  *See also Glendale*, 66 Cal. App. 3d at 137 (holding that each cause of action was distinct because the plaintiff's "contract cause of action was for breach of the agreement guaranteeing completion of the [plaintiff's] [w]indow [h]ill improvements whereas the fraud cause of action was based on the false promise on behalf of Marina View that the loan funds would be expended solely for [w]indow [h]ill off sites.").

[69] *See Baker*, 150 Cal. App. 3d at 145; *Glendale*, 66 Cal. App. 3d at 137.

11
Case No.: 5:15-cv-00034-PSG
ORDER GRANTING PARTIAL MOTION TO DISMISS

that further leave to amend be given unless it is clear that the complaint's defects cannot be cured.[70] Because the court is not yet persuaded that Lifeline's defects are beyond cure, leave to amend is granted. Plaintiffs shall file any further amended complaint no later than May 29, 2015.[71]

**SO ORDERED.**

Dated:  May 15, 2015

                                                      PAUL S. GREWAL
                                                      United States Magistrate Judge

---

[70] *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

[71] GCC requests that it be permitted to answer Lifeline's remaining claims within 14 days of the court's decision on this motion. *See* Fed. R. Civ. P. 12(a)(4). GCC's request is GRANTED.

12
Case No.: 5:15-cv-00034-PSG
ORDER GRANTING PARTIAL MOTION TO DISMISS